# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  59712-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SETH D. WEATHERS, | |
| Appellant. | |

PRICE, J. — Seth D. Weathers appeals his conviction for second degree assault, arguing that there was insufficient evidence to support the jury's verdict.[1]  We affirm.

FACTS

On December 19, 2023, the State charged Weathers with second degree assault with a firearm enhancement and drive-by shooting.  Jessica Parks was identified as the victim of the second degree assault.

Jessica[2] testified at trial.  Jessica explained that she had moved back onto her parents' property on Finn Hall Road after retiring from the Navy.  At that point, she was working with horses on the property.  Jessica described Finn Hall Road as having a lot of bed and breakfasts on

---

[1] Weathers was also convicted of drive-by shooting.  Weathers does not challenge his drive-by shooting conviction.

[2] Because Jessica and her father, Samuel Parks share the same last name, we use their first names for clarity.  We intend no disrespect.

the "water side" of the road and a lot of family homes and horse farms on the "mountain side" of the road.  Verbatim Rep. of Proc. (VRP) at 172.

On the afternoon of December 15, 2023, Jessica and her father, Samuel Parks, were riding horses along Finn Hall Road when Jessica heard a vehicle approaching behind them.  They moved the horses to the side of the road, and Jessica called her dog off the road.  Jessica testified that the vehicle was approaching "at a very high rate of speed."  VRP at 173.  When there was no indication that the driver was slowing down, Jessica became concerned that the driver did not see them or the animals.  Jessica and Samuel both began waving at the driver to slow down.  Still, the vehicle did not slow down, so Samuel "ended up throwing his hat" as the vehicle passed.  VRP at 174.  After checking on her dog, Jessica looked up to try to see a license plate number for the vehicle.  Then Jessica saw a muzzle flash and heard three gunshots.  Jessica estimated the vehicle was 200 to 300 feet away when the shots were fired.

Jessica testified that she saw the muzzle flash pointed straight out the window, rather than up:

> I saw—well, a muzzle flash, you know the fire that comes from when you fire a weapon.  And I saw it in a perpendicular position, not a raised position, which means that either the person was shooting out the window or back or forward for that matter.  But it was not like this.  It was like this, and I saw it outside the window.  So I saw the muzzle flash.  It wasn't in the cab, I was able to see it.  So it had to have been close to or just outside the window.
>
> . . . .
>
> It was not pointed up, it was pointed out, or back, or forward, just not up.

VRP at 175.  Jessica testified that hearing the shots made her afraid, stating that she was "[t]errified that somebody was gonna get hit. . . . Whether it be [her] and [her] dad, or one of the horses at the farm . . . ."  VRP at 176.  Jessica was also concerned for the safety of their neighbor, Shelby

Vaughan, who owned the horse farm on that part of the road. So Jessica and Samuel went to check on her.

On cross-examination, Jessica further explained her feelings about the incident:

Yes. So, after the—initial terror of, you know, like not knowing if anything was gonna get hurt, then I became angry because it was—it was—that initial like I want to go after, like I wanted to chase him down with my horse but that was [not] gonna happen either. And so I didn't, obviously. So, I just made sure my dad was fine, my dog was fine, and the horses were fine, and the neighbor was fine. So my anger was at the irrational behavior of somebody that we don't know and didn't know why they were shooting a gun on the road.

VRP at 182. Jessica admitted that she did not know "if they were shooting at [her] or just firing it off." VRP at 184.

Samuel also testified and described the incident consistently with Jessica's testimony. When asked what his initial reaction was to hearing the gunshots, Samuel replied, "Well, total surprise. But just oh, my gosh, you know, how—how could this happen and you're—it's upsetting, to say the least." VRP at 253. After the shots, Samuel checked on Jessica and then they went together to check on Vaughn. Again, Samuel testified that it "was pretty—pretty scary . . . ." VRP at 255.

Vaughn testified that she was on her horse farm unloading her truck when she heard gunshots. Later, Vaughn was able to review security video from cameras on her property, which partially showed the incident.

Using Vaughn's security video, law enforcement was able to locate the vehicle from the incident the next day. Deputy Cody Brooks testified that he stopped the vehicle and detained the driver. The driver was identified as Weathers. Deputy Brooks recovered a loaded pistol from a holster on Weathers' right hip.

3

The jury found Weathers guilty of second degree assault while armed with a firearm and drive-by shooting. The trial court imposed a standard range sentence of 30 months' confinement with a 36-month firearm enhancement for a total term of 66 months' confinement.

Weathers appeals.

ANALYSIS

Weathers argues that there was insufficient evidence to support his conviction for second degree assault. We disagree.

In claiming insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Roberts*, 5 Wn.3d 222, 237, 572 P.3d 1191 (2025). Reasonable inferences are drawn in the State's favor. *Id.* A conviction will be upheld if any rational jury could have found the essential elements beyond a reasonable doubt. *Id.* Circumstantial and direct evidence are equally reliable. *Id.* "We defer to the trier of fact for purposes of resolving conflicting testimony and persuasiveness of the evidence." *Id.*

Under RCW 9A.36.021(1)(c), a person is guilty of second degree assault if they assault another with a deadly weapon. A person may commit an assault by either attempting to cause bodily injury by unlawful force or an attempt to cause fear and apprehension of such an injury. *See In re Pers. Restraint of Arnsten*, 2 Wn.3d 716, 724-25, 543 P.3d 821 (2024). " '[A]ssault by attempt to cause fear and apprehension of injury requires specific intent to create reasonable fear and apprehension of bodily injury.' " *Id.* at 725 (quoting *State v. Eastmond*, 129 Wn.2d 497, 500, 919 P.2d 577 (1996)). Further, the act must in fact create in the victim a reasonable apprehension and imminent fear of bodily injury, even if the defendant did not intend to inflict bodily injury. *Id.*

4

Weathers does not dispute that he fired the shots from his vehicle. But he argues that the evidence was insufficient on two elements of the crime. Weathers argues that there was no evidence that he intended to create an apprehension and fear of bodily injury in Jessica. And Weathers argues that there was insufficient evidence to show that Jessica actually had a reasonable apprehension and imminent fear of bodily injury for herself, as opposed to any person or animal in the surrounding area.

We are not persuaded that there was insufficient evidence on either element. First, because Weathers fired the shots nearly immediately after passing Jessica and Samuel and because the area was surrounded by nothing but family homes, horse farms, and bed and breakfasts, it was reasonable to infer that Weathers' actions were in response to, and thus, intended to be directed at Samuel and Jessica. Moreover, there is no reasonable inference to the contrary under these facts; that is, the *only* reasonable inference from firing a gun in this situation is that Weathers had the intent to create apprehension and fear of bodily harm. Thus, the State presented sufficient evidence for the jury to infer that Weathers intended to create a reasonable apprehension and fear of bodily harm in Jessica and Samuel (even if the State only charged one count of second degree assault identifying Jessica as the victim).

Second, sufficient evidence supports Jessica's reasonable apprehension and fear of bodily injury. Jessica clearly testified that she was "terrified" when she heard the gunshots because someone, including herself, could have been shot. She also described on cross-examination that she was angry, but only after her "initial terror" at hearing the shots. Jessica's testimony demonstrates that she had an apprehension and imminent fear of bodily injury from being shot herself (even if she was also simultaneously fearful that Samuel, Vaughn, or the animals could

also have been shot). A reasonable juror could find that this apprehension and fear was reasonable because Jessica was unable to see specifically where Weathers was firing the weapon—at the time of the gunshots, she had no way to know whether or not Weathers was firing directly at her. Thus, construing all of the evidence and inferences in favor of the State, there was sufficient evidence to prove that by firing his gun out the window of his vehicle, Weathers did in fact cause Jessica to feel a reasonable apprehension and imminent fear of bodily injury.

CONCLUSION

Sufficient evidence supports Weathers' conviction for second degree assault. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

LEE, J.